Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@skrlawyers.com
Christopher D. Kircher, Esq., Bar No. 11176
Email: cdk@skrlawyers.com
Jarrod L. Rickard, Esq., Bar No. 10203
Email: jlr@skrlawyers.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@skrlawyers.com
SEMENZA KIRCHER RICKARD
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Facsimile: (702) 920-8669

*Attorneys for Plaintiffs Sarah Simmons, Aaron McAllister,
ROI-IT, LLC and all others similarly situated*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SARAH SIMMONS, an individual; AARON MCALLISTER, an individual; ROI-IT, LLC, a Nevada limited liability company on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CACHET FINANCIAL SERVICES, a California corporation; FINANCIAL BUSINESS GROUP HOLDINGS, a California corporation; MYPAYROLLHR LLC, a Delaware limited liability company; CLOUD PAYROLL, LLC, a Delaware limited liability company; VALUEWISE CORP., a Delaware corporation; MICHAEL MANN, an individual; NATIONAL PAYMENT CORPORATION, a Florida corporation, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

///

///

1

For their Class Action Complaint, Plaintiffs Sarah Simmons ("Simmons"), Aaron McAllister ("McAllister"), ROI-IT, LLC ("ROI-IT") (collectively, "Plaintiffs") and all others similarly situated, complain against Defendants Cachet Financial Services ("Cachet"), a California corporation, Financial Business Group Holdings ("FBG"), a California corporation, MyPayrollHR, LLC ("MyPayroll"), a Delaware limited liability company, Cloud Payroll, LLC ("Cloud Payroll"), a Delaware limited liability company, ValueWise, Corp. ("ValueWise"), a Delaware corporation, Michael Mann ("Mann") and National Payment Corporation ("NatPay"), a Florida corporation (collectively, "Defendants", except where NatPay would otherwise be excluded) as follows:

## NATURE OF THE ACTION

1. This is an action arising out of the misappropriation of nearly $35,000,000.00 in payroll funds and related payroll taxes across the United States by payroll processing firms and their agents. Defendants have individually and collectively misappropriated funds belonging to both employers and employees who have utilized services provided by the Defendants.

## DEMAND FOR JURY TRIAL

2. Plaintiffs and all others similarly situated demand a jury trial.

## JURISDICTION

3. The claims herein are brought and jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 as this matter involves claims arising under the laws of the United States and 28 U.S.C. § 1332(d)(2) as this matter is a proposed class action with an amount in controversy exceeding $5,000,000.00, involving members of a class of plaintiffs that are citizens of a State different from any defendant.

## VENUE

4. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b) as a substantial part of the claims arose in this district.

## PARTIES

5. Simmons is a resident of Clark County, Nevada and is both a majority owner of ROI-IT and employee of ROI-IT.

6. McAllister is a resident of Clark County, Nevada and is an employee of ROI-IT.

7. ROI-IT is a Nevada limited liability company conducting business in Clark County, Nevada.

8. Plaintiffs as class representatives, meet all requirements of both Fed. R. Civ. P. 23 and Nev. R Civ. P. 23. The claims asserted by Plaintiffs on behalf of all those similarly situated meet all requirements of Fed. R. Civ. P. 23 and Nev. R. Civ. P. 23.

9. Pursuant to and as required by Fed. R. Civ. P. 23(a): 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact that are common to the class; 3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interest of the class.

10. Pursuant to and as required by Fed. R. Civ. P. 23(b): 1) prosecuting separate actions would create a risk of (a) inconsistent or varying adjudications, or (b) adjudications that would be dispositive of other members not parties to the individual adjudications; 2) the party that would be opposing the class acted on grounds that apply generally to the class; or 3) that the court finds that questions of law or fact common to class members predominate.

11. Cachet is a California corporation conducting business across the United States and upon information and belief is a subsidiary of FBG. Cachet is not a bank or banking institution.

12. FBG is a California corporation conducting business across the United States and upon information and belief is the parent company of Cachet. Upon information and belief, Cachet and FBG are alter egos of one another.

13. MyPayroll is a Delaware limited liability company conducting business across the United States and upon information and belief is a subsidiary of both Cloud Payroll and/or ValueWise.

14. Cloud Payroll is a Delaware limited liability company and upon information and belief is a subsidiary of ValueWise.

15. ValueWise is a Delaware corporation conducting business across the United States

3

and upon information and belief is the parent company of MyPayroll and Cloud Payroll. Upon information and belief, ValueWise, Cloud Payroll and MyPayroll are alter egos of one another.

16. Upon information and belief Mann is a resident of the State of New York. Upon information and belief Mann is the Chief Executive Officer and/or owner of ValueWise. Upon information and belief Mann is also the direct or indirect owner of both MyPayroll and Cloud Payroll. Upon information and belief, Mann is the alter ego of ValueWise, Cloud Payroll and MyPayroll.

17. NatPay is a Florida corporation conducting business across the United States.

18. Upon information and belief and at all relevant times, the Defendants were acting on behalf of one another, at the direction of one another, and as agents of one another relating to the allegations contained herein.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

19. Prior to and at the time of the events giving rise to this action, ROI-IT utilized MyPayroll to provide payroll processing services. MyPayroll utilized Cloud Payroll and/or ValueWise as part of the payroll services provided to ROI-IT.

20. On August 29, 2019, ROI-IT completed its customary company payroll in the amount of $8,759.60, with $6,397.46 representing employee payroll and $2,362.14 representing employer and employee payroll taxes. The $8,756.60 included employee payroll payments to both Simmons and McAllister.

21. In turn, on August 30, 2019, MyPayroll, Cloud Payroll and/or ValueWise deducted $8,756.60 from ROI-IT's bank account.

22. ROI-IT employees Simmons and McAllister, were paid on August 30, 2019 via direct deposit.

23. However, on September 5, 2019, the August 30, 2019 payroll payments to both Simmons and McAllister were withdrawn from their respective personal bank accounts. It was only later determined that the payroll payments were withdrawn by Cachet and/or FBG. Plaintiffs assert that MyPayroll, Cloud Payroll and/or ValueWise contracted with Cachet and/or FBG for purposes of processing electronic payroll fund transfers.

4

24. On the same day, ROI-IT and Simmons received an e-mail from MyPayroll identifying that the payroll account used by MyPayroll had been frozen, which prevented it from generating transactions and causing reversals on recent transactions. The e-mail indicated that MyPayroll would be updating its clients as to the situation as more information became available.

25. Later that day, ROI-IT and Simmons received a second e-mail from MyPayroll identifying that it was no longer able to process any further payroll transactions and to find an alterative method for processing payroll. The e-mail identified that employers should be prepared to find an alternative way to pay employees including for any payroll reversals that took place. The e-mail further stated that MyPayroll was working to release any funds that were in transit as a result of the situation.

26. Because Simmons and McAllister had their payroll payments withdrawn from their personal bank accounts, ROI-IT thereafter issued manual checks to both of them totaling $6,397.46.

27. Thereafter, on September 6, 2019, and again without any notice, explanation or justification, Cachet and/or FBG withdrew funds from both Simmons and McAllister's personal bank accounts for a second time.

28. On September 6, 2019, ROI-IT and Simmons received a message from MyPayroll through its online portal that identified if any employees' accounts were debited a second time, to advise those employees to contact their respective banks to reject the transaction.

29. Prior to learning that the withdrawals had taken place at the direction of both Cachet and/or FBG, on September 6, 2019, ROI-IT and Simmons sent a demand letter to MyPayroll and Cloud Payroll for the return of all monies that had been improperly taken, including the amounts designated for payroll taxes.

30. Neither MyPayroll nor Cloud Payroll responded to ROI-IT's demand letter.

31. At present, neither ROI-IT, Simmons or McAllister have been repaid all amounts improperly taken from them, and Simmons and McAllister have incurred expenses, fees, costs or other damages relating to the withdrawal of the funds from their personal bank accounts.

32. Before abruptly ceasing its operations without any notice whatsoever, MyPayroll

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

identified that it served approximately 4,000 employers across the United States. Those employers, in addition to ROI-IT, also had employee payroll and payroll taxes misappropriated by the Defendants. Pursuant to state and federal law, employers are required to pay employees at certain intervals or on certain dates. Many of the affected employers were left scrambling to find a way to pay their employees following Cachet and/or FBG's reversals.

33. In addition, the approximately 4,000 employers had many more employees who had their payroll misappropriated from their respective bank accounts. In addition, many employees had their bank accounts debited a second time in the same amount. The withdrawal of these funds forced employees to incur expenses, fees, costs or other damages.

34. After the Defendants' fraudulent and wholly improper conduct received national attention and press, Cachet made a number of public statements in an attempt to explain the situation and its own conduct. Cachet explained that MyPayroll somehow redirected the August 30, 2019 employee payroll transfers away from a Cachet settlement account to a bank account that it controlled with Pioneer Bank. The Pioneer Bank account was/is controlled by MyPayroll, Cloud Payroll, ValueWise and/or Mann. At present, it is unclear whether Cachet was aware of and/or approved of the transfer. At or around the same time, Cachet made the required employee payroll payments in the approximate amount of $26,000,000.00.

35. Thereafter, Cachet and/or FBG issued banking instructions on or about September 4, 2019 directing all employee banks to reverse the August 30, 2019 payroll payments. Cachet and/or FBG allege that those banking instructions included incomplete/improper instructions, although the respective banks complied with the instructions resulting in the withdrawal of the payroll payments. The next day, Cachet and/or FBG issued a second set of banking instructions directing all employee banks to yet again reverse the August 30, 2019 payroll payments. Again, the employee banks complied with the instructions, which resulted in a second withdrawal from employees' bank accounts.

36. Cachet and/or FBG were not entitled to reverse the employee payroll payments issued on August 30, 2019. Nor was Cachet and/or FBG entitled to unilaterally withdraw the payroll payments from employee bank accounts a second time.

37.     Appallingly, Wendy Slavkin, an attorney and General Counsel for Cachet, has publicly stated that "as it stands today . . . the biggest victim, and really the only victim and victims, is Cachet."  Obviously, the statement is patently false as thousands of employers and employees have had their businesses and lives uprooted by the misappropriation and fraud of the Defendants and Cachet and/or FBG's wholly improper conduct.

38.     Ms. Slavkin was also quoted as stating that all "employees affected by this will in the next day or two have all their money back."  As of this filing, all the funds belonging to ROI-IT, Simmons and McAllister have not been returned and Plaintiffs believe the same is true for the other employers and employees nationwide.

39.     As a result, countless instances of employers and employees' financial hardship have been reported.  For instance, many have complained of being incapable of making mortgage or rent payments.  A multitude of others have been hit with various account fees after the reversal of payroll payments left their bank accounts with negative balances.  Others have described difficulties maintaining their quality of life, as they are unable to feed their families, pay their bills, or purchase gas to make it to and from work.  Put simply, the effect of Defendants' fraud and Cachet and/or FGB's conduct has rippled nationwide, putting many of those affected in precarious financial situations as a result.

40.     Plaintiffs also assert that MyPayroll, Cloud Payroll and/or ValueWise contracted with NatPay for purposes of handling employers' tax withholdings.  Therefore, NatPay, not Cachet and/or FBG, was apparently responsible for the payment of payroll tax payments for MyPayroll.  The payroll tax liability for the payroll at issue has been identified at approximately $9,000,000.00.  A portion of that $9,000,000.00 included employer and employee payroll tax due to various government entities from ROI-IT, Simmons and McAllister.

41.     At present, it is unclear where the $9,000,000.00 has gone and whether NatPay has paid the required employer/employee payroll taxes.  As such, NatPay is included as a defendant in this case at present only as to Plaintiffs' claims for declaratory and injunctive relief.  Plaintiffs shall amend this Complaint to the extent that additional facts and claims against NatPay become warranted and/or necessary.

7

**PROPOSED CLASSES**

42. As set forth herein, nearly 4,000 employers relied on MyPayroll's services. However, in addition to the aforementioned employers, thousands of employees have been impacted by the conduct of the Defendants. The employers and employees affected span the entire United States and are not just limited to the State of Nevada.

43. Based upon the foregoing, those affected by Defendants' inappropriate and unlawful activities are best categorized into at least two classes:

    a. The first proposed class includes all employers across the United States, who have been impacted and damaged by the Defendants' conduct.

    b. The second proposed class includes all employees, who are undoubtedly in the tens of thousands, who have been impacted and damaged by the Defendants' conduct.[1]

**FIRST CAUSE OF ACTION**
**(Federal RICO Violation – As to All Defendants Except NatPay)**

44. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

45. Plaintiffs and all others similarly situated bring this claim against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

46. Section 1962 of RICO makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

47. Pursuant to Section 1961 of RICO, a racketeering activity may include bank fraud as defined by 18 U.S.C. § 1344 as the execution, attempt or scheme to "obtain any of the moneys, funds, credits, assets, securities or other property owned by, or under the custody or control of, a

---

[1] It may also be appropriate to have Nevada-specific subclasses in this matter based on the causes of action asserted herein.

8

financial institution, by means of false or fraudulent pretenses, representations, or promises[.]"  18 U.S.C. § 1344(2).

48. MyPayroll, Cloud Payroll, ValueWise and Mann violated 18 U.S.C. § 1344(2) by fraudulently rerouting employer payroll funds to a Pioneer Bank account they controlled.

49. Cachet and FBG also violated 18 U.S.C. § 1344(2) by illegally withdrawing deposited payroll funds from employee bank accounts without any notice or authorization to do so.

50. Moreover, pursuant to Section 1961 of RICO, a racketeering activity may also include wire fraud as defined by 18 U.S.C. § 1343 as when persons "having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 1343.

51. MyPayroll, Cloud Payroll, ValueWise and Mann violated 18 U.S.C. § 1343 by transmitting fraudulent instructions to reroute employers' payroll funds to a Pioneer Bank account they controlled.

52. Cachet and FBG also violated 18 U.S.C. § 1343 by transmitting reversals to employee banks and illegally withdrawing deposited payroll funds from employee bank accounts.

53. Cachet operates as an automated clearing house, not a bank.  Therefore, Cachet was not authorized to reverse the payroll payments it made into employee bank accounts or withdraw additional monies from those bank accounts.

54. As a result of Defendants' actions, Plaintiffs and all others similarly situated have been damaged in an amount that exceeds $5,000,000.00, exclusive of interest and costs, and are entitled to any and all statutory damages.

55. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

///

## SECOND CAUSE OF ACTION
### (Fraudulent or Intentional Misrepresentation – As to All Defendants Except NatPay)

56. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

57. Defendants intentionally and falsely represented that they would properly distribute payroll funds from employer bank accounts to employee bank accounts through secure and trustworthy channels.

58. Defendants intentionally and falsely represented that they would not misappropriate or misuse the payroll funds belonging to both employers and employees.

59. Plaintiffs and all others similarly situated relied on these representations in deciding to utilize Defendants' services and/or in allowing for the transfer of payroll funds from employer to employee bank accounts by means of the Defendants' services.

60. As a result of Defendants' actions and/or inactions, Plaintiffs and all others similarly situated are entitled to damages in excess of $5,000,000.00, exclusive of costs and interest.

61. As a result of Defendants' actions and/or inactions, Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

62. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated.  As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Conversion – As to All Defendants Except NatPay)

63. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

64. By unlawfully taking approximately $35,000,000.00 of payroll funds and related payroll taxes, Defendants wrongfully exerted an act of dominion and control over the personal

property of Plaintiffs and all others similarly situated.

65. Defendants have exercised this dominion and control in derogation, exclusion and defiance of the rights of Plaintiffs and all others similarly situated.

66. As a result, Plaintiffs and all others similarly situated have been damaged in an amount that exceeds $5,000,000.00, exclusive of costs and interest.

67. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

68. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated.  As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment – As to All Defendants Except NatPay)

69. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

70. Plaintiffs and all others similarly situated conferred a benefit on Defendants by utilizing their services and entrusting them to properly process and distribute their payroll funds.

71. Defendants have unjustly retained approximately $35,000,000.00 of payroll funds and/or related payroll taxes belonging to Plaintiffs and all others similarly situated.

72. As a result, Plaintiffs and all others similarly situated have been damaged in an amount that exceeds $5,000,000.00, exclusive of costs and interest.

73. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

### FIFTH CAUSE OF ACTION
### (Intentional Interference with Contractual
### Relations – As to All Defendants Except NatPay)

74. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

75. There exists a valid legal and contractual relationship between employers and

employees. Employees are compensated for their work, by which employers derive a financial benefit.

76. Defendants knew of the existing valid legal and contractual relationship between such employers and employees.

77. Defendants intentionally disrupted this legal and contractual relationship by either misappropriating employer payroll funds and/or improperly withdrawing payroll funds that were rightfully owed to employees.

78. Defendants' actions and/or inactions disrupted this valid legal and contractual relationship by leaving employees unpaid for their services and by misappropriating employer payroll and tax funds.

79. As a result of Defendants' actions and/or inactions, Plaintiffs and all others similarly situated are entitled to damages in excess of $5,000,000.00, exclusive of interest and costs.

80. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

81. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated. As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
**(Negligent Interference with Contractual Relations – As to All Defendants Except NatPay)**

82. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

83. There exists a valid legal and contractual relationship between employers and employees. Employees are compensated for their work, by which employers derive a financial benefit.

84. Defendants knew or should have known of the existence of a valid legal and

contractual relationship between such employers and employees, and were aware, or should have been aware, that their failure to act with due care would interfere with the valid legal and contractual relationship between them.

85. Defendants owed Plaintiffs and all others similarly situated a duty to ensure that that such employees received all employer payroll funds and that the employer payroll funds and payroll taxes were handled with due care.

86. Defendants failure to properly deposit all payroll funds into employee bank accounts constituted a breach of Defendants' duty to Plaintiffs and all others similarly situated.

87. As a result of Defendants' breach, the valid legal and contractual relationship between employers and employees was disrupted.

88. As a result of Defendants' actions and/or inactions, Plaintiffs and all others similarly situated are entitled to damages in excess of $5,000,000.00, exclusive of interest and costs.

89. Plaintiffs and all others similarly situated have been forced to retain to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

90. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated. As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
### (Intentional Interference with Prospective Economic Advantage – As to All Defendants Except NatPay)

91. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

92. There exist ongoing prospective contractual relationships between employers, employees and third-parties.

93. Defendants knew of these prospective contractual relationships.

94. Defendants intentionally interfered with these prospective contractual relationships

by misappropriating employer and employee payroll funds and payroll taxes.

95. Defendants' interference was wholly improper and resulted in actual harm to both employers and employees and their prospective contractual relationships.

96. As a result of Defendants' actions, Plaintiffs and all others similarly situated are entitled to damages in excess of $5,000,000.00, exclusive of interest and costs.

97. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

98. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated.  As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
### (Negligent Interference with Prospective Economic Advantage – As to All Defendants Except NatPay)

99. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

100. There exist ongoing prospective contractual relationships between employers, employees and third-parties.

101. Defendants knew or should have known of the existence of these prospective contractual relationships.

102. Defendants owed Plaintiffs and all others similarly situated a duty not to interfere with these prospective contractual relationships.

103. Defendants interfered with these prospective contractual relationships by misappropriating employer and employee payroll funds and payroll taxes.

104. Defendants' interference was wholly improper and resulted in actual harm to both employers and employees and their prospective contractual relationships.

14

105. As a result of Defendants' actions, Plaintiffs and all others similarly situated are entitled to damages in excess of $5,000,000.00, exclusive of interest and costs.

106. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

107. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated. As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

### NINTH CAUSE OF ACTION
**(Negligence – As to All Defendants Except NatPay)**

108. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

109. Defendants owed Plaintiffs and all others similarly situated a duty of care as described herein.

110. Defendants breached that duty by either misappropriating payroll funds and payroll taxes, or by improperly withdrawing payroll funds from employee bank accounts.

111. Plaintiffs and all others similarly situated have been damaged in an amount that exceeds $5,000,000.00, exclusive of interest and costs.

112. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

113. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated. As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

///
///
///
///

15

## TENTH CAUSE OF ACTION
**(Declaratory Relief – As to All Defendants)**

114. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

115. A justiciable controversy has arisen as to who is entitled to the approximately $35,000,000.00 of misappropriated payroll funds and payroll taxes.

116. A judicial declaration of the parties' rights is necessary to avoid any further dispute between the parties and all others similarly situated related to the issues set forth herein.

117. As a result of Defendants' actions, Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

## ELEVENTH CAUSE OF ACTION
**(Injunctive Relief – As to All Defendants)**

118. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

119. As a result of Defendants' conduct, employer and employee funds have been fraudulently misappropriated.

120. Based upon the principles of equity, Plaintiffs and all others similarly situated are entitled to the return of any and all funds that were either misappropriated or improperly withdrawn from their bank accounts.

121. It is in the public's interest to mandate the immediate return of all stolen funds that are rightfully owed to Plaintiffs and all others similarly situated.

122. With regard to the tax payments, it is in the public's interest to mandate that NatPay and/or the other Defendants immediately make all required tax payments on behalf of both employers and employees.

123. As a result of Defendants' actions, Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

**TWELFTH CAUSE OF ACTION**
**(Nevada Deceptive Trade Practices –**
**As to All Defendants Except NatPay)**

124. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

125. This Nevada statutory claim applies specifically to Plaintiffs individually and any other Nevada-based employer and employee.

126. On behalf of Plaintiffs and all others similarly situated, Defendants engaged in a deceptive trade practice pursuant to Nev. Rev. Stat. Ch. 598 by improperly diverting payroll funds and tax payments for their personal use and by withdrawing payroll funds and other amounts from employee bank accounts, which the Defendants had no right to do.

127. Defendants' conduct constitutes a deceptive trade practice pursuant to Nev. Rev. Stat. Ch. 598.

128. By way of example only, Defendants engaged in a deceptive trade practice by among other things, "[k]nowingly mak[ing] [a] false representation in a transaction." NRS 598.092(15).

129. In addition, Defendants deliberately and purposefully failed to notify Plaintiffs and all others similarly situated that amounts would be withdrawn from employee bank accounts. This constituted a deceptive trade practice pursuant to Nev. Rev. Stat. Ch. 598.

130. As a result of Defendants' actions and/or inactions, Plaintiffs and all others similarly situated are entitled to damages in excess of $5,000,000.00, exclusive of interest and costs, as well as any and all statutory damages.

131. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

132. Plaintiffs and all others similarly situated are informed and believe and thereon allege that Defendants' conduct was willful, wanton and malicious and was done in conscious disregard of Plaintiffs' rights and those of all others similarly situated. As a direct result, Plaintiffs and all others similarly situated are entitled to an award of punitive damages.

# THIRTEENTH CAUSE OF ACTION
### (Nevada RICO Violation – As to All Defendants Except NatPay)

133. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

134. Plaintiffs and all others similarly situated bring this claim against Defendants pursuant to the Racketeering Act, NRS 207.350-520.

135. This Nevada statutory claim applies specifically to Plaintiffs individually and any other Nevada-based employer and employee.

136. Section 207.400 of the Racketeering Act makes it unlawful for a person "[w]ho is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in . . . racketeering activity through the affairs of the enterprise." NRS 207.400(1)(c)(2).

137. Section 207.400 of the Racketeering Act also makes it unlawful "for a person to conspire to violate any of the provisions" of the Racketeering Act. NRS 207.400(1)(j).

138. In accordance with 207.360, a crime related to racketeering may include "[e]mbezzlement of money or property valued at $650 or more [and] obtaining possession of money or property valued at $650 or more." NRS 207.360(27)-(28).

139. Defendants embezzled $35,000,000.00 in employer payroll funds and related payroll taxes, which constitutes a clear violation of NRS 207.400(1)(c)(2).

140. As a result of Defendants' actions, Plaintiffs and all others similarly situated have been damaged in an amount that exceeds $5,000,000.00, exclusive of interest and costs and are entitled to any and all statutory damages.

141. Plaintiffs and all others similarly situated have been forced to retain counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiffs and all others similarly situated pray for judgment as follows:

A. For damages in an amount to be determined at trial, but in excess of $5,000,000.00;

B. For exemplary or punitive damages;

C. For any and all statutory damages;

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

C. Attorney's fees and costs of suit;

E. Prejudgment and post-judgment interest on the amounts owed;

F. For declaratory relief as set forth above;

G. For injunctive relief as set forth above; and

H. Any further relief this Court deems proper.

DATED this 16th day of September, 2019

SEMENZA KIRCHER RICKARD

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Christopher D. Kircher, Esq., Bar No. 11176
Jarrod L. Rickard, Esq., Bar No. 10203
Katie L. Cannata, Esq. Bar No. 14848
10161 Park Run Drive, Ste. 150
Las Vegas, Nevada 89145

*Attorneys for Plaintiffs Sarah Simmons, Aaron Mc Allister, ROI-IT, LLC and all others similarly situated*

19